UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| DAN JACOBSON, | ) | USDC of Massachusetts Case No |
| | ) | 05–CV-10664-MEL(Superior |
| | ) | Court for Middlesex County |
| Plaintiff, | ) | Civil Action No. 05-0060) |
| | ) | |
| v. | ) | |
| | ) | |
| CVS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

_____

**PLAINTIFF DAN JACOBSON'S  MEMORANDUM OF REASONS IN SUPPORT OF HIS  MOTION FOR REMAND TO STATE COURT OR FOR A DISCOVERY ORDER; AND REQUEST FOR SANCTIONS AGAINST DEFENDANT CVS CORPORATION FOR IMPROPER REMOVAL**

NOW COMES YOUR PLAINTIFF Dan Jacobson and hereby states his REASONS

supporting his Motion for Remand of this action to the Superior Court of the Commonwealth of

Massachusetts, Middlesex County, as follows:

<u>Introduction</u>

Dan Jacobson ("Mr. Jacobson"), a seventy-two-year-old former photographer, brought this

action in the Superior Court of the Commonwealth of Massachusetts, Middlesex County, after

defendant fired him and replaced him with a worker in her late teens or early 20s.  Mr. Jacobson

had worked for defendant part-time for more than two years operating and servicing the

photographic developing machine defendant maintained as a service to its customers.  Prior to

being terminated, management eliminated certain privileges and perquisites of his position; and

became less engaging and amicable in their daily dealings with him.   Additionally, management offered reasons for terminating him which varied from the facts of his job performance, including tardiness and customer relations, which he had always felt were strong features of his doing his job.

His job with defendant was important to Mr. Jacobson, no less because it enabled him to maintain contact with his lifelong profession than for the income it contributed to his and his wife's well-being; and he appealed to defendant's management to reconsider its action.   When his efforts in this direction yielded nothing, he reluctantly filed his Complaint timely with the state FEPA, the Massachusetts Commission Against Discrimination; and subsequently removed it to state Superior Court.

Shortly following service, on or about April 5, 2005, defendant removed the action to this forum, alleging federal jurisdiction based on diversity due to its corporate headquarters (and putative principal place of business) being located in Rhode Island, a foreign jurisdiction; and on the  jurisdictional amount in controversy, see 28 U.S.C. §1332(a)(1); Notice of Removal, ¶2[1].   A number of indicia, however, show that defendant's principal place of business is in Massachusetts; and that the amount in controversy falls well below the jurisdictional amount. Mr. Jacobson accordingly herewith files his Motion seeking remand to state court, noting that the facts do not support removal under the law; and that the case is appropriate for application of the abstention doctrine.

---

[1]  All claims raised by Mr. Jacobson's Complaint arise under Massachusetts law and no federal question is presented by any of these claims.

<u>Argument</u>

A.     <u>**DEFENDANT CVS' PRINCIPAL PLACE OF BUSINESS IS IN MASSACHUSETTS, AND NOT RHODE ISLAND AND THUS UNDER CONTROLLING LAW NO DIVERSITY OF CITIZENSHIP EXISTS**</u>

1.     <u>**First Circuit decisions favor remand under circumstances like Mr. Jacobson's**</u>

"For purposes of determining whether diversity of citizenship exists , "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has it's principal place of business. 28 U.S. C. §1332 c (1). The Court must identify where it has the principal place of business of a corporation, even if the corporation has not made such an identification for itself." *Media Duplication Servs. Ltc. v. HDG Software, Inc.*, 928 F. 2d 1228, 1236 (1st Circ 1991). The burden of proving a corporation's principal place of business rests upon the party asserting existence of diversity jurisdiction, id. at 1236;  Wright & Miller, Federal Practice and Procedure §3625, at 640 (1984 Supp and 2003).

In the First Circuit, a corporation's principal place of business is determined by use of three distinct, but not necessarily inconsistent tests, see *De Walker v. Pueblo International, Inc.* 569 F. 2d 1169 at 1171  (1st Cir. 1978).  The court has employed one or more of these tests in the recent past in determining that a state court matter should be remanded, see, e.g., *Rautenstrauch v. Stern/Leach Company*, 2004 U. S. Dist. Lexis 140 (U. S. D.C. Massachusetts  Case No. 03-10723), where the court examined a similar set of circumstances to Mr. Jacobson's.  There, as here, a defendant corporation removed a discrimination case on the ground of diversity, alleging as here that the corporate headquarters were located in Rhode Island. The plaintiff as here was a citizen of Massachusetts; and the defendant corporation was similarly incorporated in the State of Delaware but had its corporate headquarters, as here, in the State of Rhode Island. However,  its

main manufacturing plants were in Massachusetts and Rhode Island, with sales offices in New

York, Texas, California, Hawaii, the United Kingdom and Hong Kong.

The *Rautenstrauch* case described the three (3) tests used by the First Circuit as follows:

"First, under the 'center of corporate activity' test, a corporation's principal place of business is

'where the corporation's day to day management takes place.' Id. at 1172; *Kelley v. United*

*States Steel Corp.* , 284 F. 2d 850, 854 (3d Cir. 1960). Second, under the "locus of operations of

the corporation" test, the principal place of business is "where the bulk of the corporation's

actual physical operations are located, citing *Topp v. CompAir Inc*. 814 F. 2d 830 at 834 (1st Cir.

1987); *Inland Rubber Corp. V. Triple A Tire Service Inc* 220 F. Supp 490 (S.D.N.Y. 1964).

Third, under the "nerve center" test, a corporation's principal place of business is "the center

from which a (multifaceted corporations') officers direct, control and coordinate all activities

without regard to locale, in the furtherance of the corporate objective, see, *De Walker, supra,* at

1172.

There has been no discovery propounded in this matter as yet. With defendant having

answered only on April 11, 2005, Mr. Jacobson has been limited to readily available public

sources to gather information regarding the day to day operations of defendant corporation and

other details of its structure. The facts thus established, however, demonstrate that by inference,

defendant has a comparatively small number of employees located in Rhode Island, including at

its fifty-three stores and corporate headquarters; while in Massachusetts it operates at least three-

hundred-fifty-two[2] stores and pharmacies (see Exhibit A, ¶9) and maintains three (3) regional

---

[2] Defendant's website asserts a different number (three hundred thirty two) of stores in
Massachusetts , see documents attached to Exhibit A; but the three-hundred-fifty-two number
was provided to a caller, see Id. In either case, the number of Massachusetts stores exceeds by a

offices where it houses its vice-president, other executives  and numerous district managers.
These regional offices are located in Stoughton, Massachusetts; Chicopee, Massachusetts; and
Needham (formerly in Cambridge), Massachusetts.  Publicly available information, and
inferences reasonably drawn therefrom, support a finding that defendant's three regional offices
located in Massachusetts handle the day to day operations of some seven-eighths of defendant's
operations (which predominantly entail Massachusetts and other adjacent states) compared to
Rhode Island.   This inference is supported by the fact that defendant operates three-hundred and
fifty-two (352) stores in Massachusetts, compared to only fifty-three (53)  in Rhode Island, see
Exhibit A ¶9.

Moreover, defendant has failed to carry its burden of demonstrating that the bulk of its
operations occur in Rhode Island. As in the *Rautenstrauch* case, defendant here has offered no
evidence of "where the bulk of the corporation's actual physical operations are located", and
therefore has not met  its legally required burden.  Defendant has merely filed a "boilerplate"
notice of removal with very little substance and no supporting evidence in this regard.   Remand
is thus the only correct response to the present Motion.

2.  **Other Federal Courts Also Favor this Approach**

In *Zavala v. G. D. Searle & Co.*, 1991 U.S. Dist. Lexis 9502, the Court discusses a fourth
test i.e. "the total activities test." This test is the union of the "nerve center test" and the
"corporate activities test". Under this test the court takes into consideration factors such as the
location of the corporation's most substantial investment and the location at which the corporate
purpose is fulfilled., citing *J. A Olson v. City of Winona, Miss.* 818 F2d 401 at 412 (5th Cir 1987).

large multiple those in the putative principle place of business of Rhode Island.

*However, the Courts have stated that no matter what test is applied no single factor is determinative as the court will look at all the facts to determine a corporation's principal place of business.  Citing State Farm Fire & Casualty Co. v. L. Author Byrd, 710 F. Supp 1292, 1293 (N.D. Col. 1989)*

Under settled [Ninth] Circuit law, the determination of a corporation's principal place of business does not automatically turn on the location of its corporate headquarters. Two different tests are used to determine a corporation's principal place of business. First, the "place of operations test" holds that a corporation's principal place of business is the state that "contains a substantial predominance of corporate operations." *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). Second, the "nerve center test" holds that a corporation's principle place of business is where the majority of its executive and administrative functions occur. Id. Finally, under Ninth Circuit law, the "nerve center test" applies only when no state has a "substantial predominance of corporate operations." Id. at 1094.

In *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495 (9th Cir. 2001), the Ninth Circuit Court of Appeals provided guidance on how to apply the "substantial predominance of operations test" and made plain that the comparison must be state to state. There, the corporate plaintiff argued that the "nerve center test" should apply because no state contained the majority of its operational activities and, thus, it claimed that it did not have a "substantial predominance of operations" in any state. Id. at 500. The defendant argued that the plaintiff corporation had a "substantial predominance of operations" in California.  Id. In response, the plaintiff compared its California operations to its operations in all other states combined, rather than comparing its California operations to its operations in other states

– 6 –

(individually). Id. The Ninth Circuit rejected this application of the "substantial predominance test," holding that "determining whether a corporation's business activity substantially predominates in a given state plainly requires a comparison of that corporation's business activity in the state at issue to its business activity in other individual states." Id. To analyze the amount of operations in a given state, the Court looked to the location of the corporation's: (1) employees; (2) tangible property; (3) production activities; (4) sources of income; and (5) where sales take place. Id. In sum, the Court held that "substantial predominance" does not require the majority of a corporation's total business activity to be located in one state, but instead requires only that the amount of a corporation's business activity in one state be significantly larger than in any other state in which the corporation conducts business. Id.

In *Ghaderi v. United Airlines, Inc.*, 136 F.Supp.2d 1041 (N.D. Cal. 2001), the District Court relied on *Tosco Corporation* to assess the principal place of business of defendant United Airlines. The District Court noted that there is a "preference in the Ninth Circuit for the place of operations test" because "[d]eeming a corporation a citizen of the state with which it has the most public contact and, therefore, the 'greatest potential for litigation,' helps reduce the federal court diversity case load," and "where a party has substantial contact with the public, the public is not likely to view it as an 'outsider' and not likely to discriminate on the basis of citizenship." Id. at 1044. The Court then reviewed the evidence in the record comparing United's operations in California with in other states, and found that it supported the claim that United's presence in California substantially predominated over its presence in any other single state. Id. at 1045-1048.[4]

To determine what constitutes a "substantial predominance," it held that "courts must

address this kind of question on a case by case basis, taking into account each of the many

pertinent circumstances" and the policies that underlie federal diversity jurisdiction.  Id. at 1047.

Thus, the Court declared:

"We hold, therefore, that at least in a setting like this, where the corporation engages in a

great deal of business activity in the state in issue, and where it engages in more of the kind of

activity that matters most (analytically) in that state than in any other state, the courts should give

the term "substantial" a relatively narrow meaning — and thus should decline to resort to the

nerve center test unless the corporation proves that the difference between the levels of business

activity in the states being compared is relatively insignificant. Stated differently, where the

corporate party attempting to invoke diversity jurisdiction has a significant presence in both

states of comparison, the difference between the magnitude of activity in the two states need not

be very large to be considered "substantial." Id. at 1047. Here, according to defendant's website,

it has a total of at least three-hundred-thirty-two stores in Massachusetts as compared to fifty-

three in Rhode Island, see Exhibit A ¶9.

In Ghaderi court stated  " We note at the outset that it appears that [the party seeking to

remove] is not the kind of litigant that diversity jurisdiction was intended to protect in either

California or Illinois. [The party seeking to remove] maintains a large presence in both states and

is unlikely to be considered an "outsider" in either.   Because [the party seeking to remove] is

unlikely to suffer discrimination in either state, the court has struggled with how to choose the

one state most appropriately considered its "principal place of business". Of course, we do not

make this determination in a vacuum. Several well-established public policies as well as Ninth

Circuit case law guide us in this context."  "Public policy favors allowing state courts to

adjudicate state law claims: The diversity statute is to be strictly construed against intruding on

the rights of the states to decide their own controversies. ..." There is a presumption against

removal and federal courts must reject jurisdiction if there is doubt about the right of removal in

the first instance.

"The primary purpose of the diversity statute is to avoid prejudice against "outsiders".

Parties who have a great deal of contact with the public in a particular state are not likely to be

considered outsiders and, therefore, are not likely to be victims of discrimination by "locals".

    3.    <u>Defendant's History further supports this matter proceeding in state court</u>.

Defendant has a long, broad history of operating in Massachusetts, see documents

attached to Exhibit A.  It opened its first store in Lowell, Massachusetts, in 1963 and has an

abundant presence here, including many stores located within a small radius, emanating  from

here into nearby states.   Also telling, from the perspective of  forum selection, Rhode Island is

closely connected with Massachusetts, sharing two of its three land borders with this state; and

but a short distance (less than an hour's drive, see Exhibit A) from the Massachusetts court

where this suit was filed, Middlesex County.  Defendant's corporate offices are in Woonsocket,

Rhode Island , approximately one (1) mile from the Massachusetts border.  Many locations in

Massachusetts are farther from the Middlesex County Courthouse than the Rhode Island federal

court is.

The vastly larger number of pharmacies and stores defendant operates in Massachusetts

compared to Rhode Island further supports the inference that Massachusetts is its principal place

of business under other analyses.  For example, the three-hundred-fifty-two stores in

Massachusetts clearly support an inference that the far greater majority of employees,  sales,

consumers, tangible property, sources of income and other significant major operational functions occur here; while Rhode Island, with a fractional fifty-three stores, generates undoubtedly fewer sales, fewer employees, tangible property, and other indicia of corporate activity.

Again it should be noted that the "law clearly places the burden of persuasion on these issues on the party seeking to invoke the court's diversity jurisdiction. *ITI*, 912 F. 2d at 1092. In the instant matter, at least at this juncture, defendant has not met that burden, nor can they, inasmuch as under the "substantial predominance test" and/or "place of operations" test, that between the two compared states, Massachusetts and Rhode Island, - Massachusetts would be considered Defendants CVS' principal place of business. [ See also *Toms v. Country Quality Meats*, 610 F.2d 313 (5th Cir. 1980) where the Court used "total activity test", which is a combination of "place of activities test", focusing on production or sales activities; *Amoco Rocmount Co. v. Anschutz Corp* (CA10 (Wyo) 1993, 7 F.3rd 909. "Totality of circumstances" test used here*; Powers v. Fox Television* (SDNY 1995)907 F. Supp 719; *Tubbs v. Southwestern Bell Telephone Co.,* 846 F. Supp. 551 (SD Tex. 1994.)

**B.    THE AMOUNT IN CONTROVERSY IN THE PRESENT CASE IS INSUFFICIENT TO SUSTAIN FEDERAL JURISDICTION**

Additionally, defendant asserts jurisdiction exists in this court respecting the amount in controversy in this matter; but has failed even to specify the amount in controversy in its Notice of Removal and therefore has failed to meet its burden in this regard. The Court cannot go beyond the four corners of the pleadings.

As noted, the test for sustaining federal jurisdiction following removal by one party ot another is two-pronged: not only must the party seeking removal demonstrate that its basis, diversity, is supported by the facts (which defendant here is unable to do); but it must also show that the second prong of the test, the amount in controversy, has similarly been satisfied.  Here, defendant acknowleges in its removal pleadings that Mr. Jacobson has made no assertion that his claims would total below the federal jurisdictional threshhold of seventy-five thousand ($75,000) dollars[3]    However, in the cover sheet which Mr. Jacobson was obliged to file along with his Complaint, and which calls for a prediction of the amount of damages he anticipates being due (and which was served on defendant along with the Complaint) Mr. Jacobson recited an amount of thirty thousand ($30,000) dollars,   well below the statutory amount, see Exhibit B.

Moreover, Mr. Jacobson through counsel files with the court with this Motion a statement of anticipated damages which also claims an amount not to equal or exceed $75,000, see Exhibit C.   Accordingly, this matter fails to meet the jurisdictional standard respecting both prongs of the test; and Mr. Jacobson's Motion for Remand must be allowed.

## C.    OTHER PRINCIPLES OF REMOVAL LAW ALSO FAVOR REMAND UNDER THE CIRCUMSTANCES PRESENT IN MR. JACOBSON'S CASE

Mr. Jacobson's Complaint contains counts sounding in discrimination on account of age; and breach of contract; and seeks equitable relief as well as money damages, see Exhibit D. These counts represent issues on which the state court is the appropriate forum under settled principles of federal jurisdictional law.  "'Removal statutes are an infringement on the power of the states and must be strictly construed in favor of state court jurisdiction.' *Landman v. Borough*

---

[3]It is practice in Massachusetts courts not to include the amount claimed in the Complaint.

*of Bristol, et al.*, 896 F. Supp. 406, 408 (E.D. Pa. 1995); citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)," quoted in *Davidson v. National R.R. Passenger Co.*, 2000 U.S. Dist. Lexis 8707 (E.D. Pa. June 9, 2000).

For example, the prevention of discrimination in employment against several categories of its citizens, including older citizens, is a matter of paramount interest to the Commonwealth of Massachusetts, *see, e.g.*, Massachusetts Fair Employment Act, G.L. c. 151B ("Act"). Moreover, Massachusetts law prohibiting discrimination in employment represents an articulated plan which varies in significant respects from its federal counterpart, *see, e.g., id.*; *Dahill v. Police Department of Boston,* 434 Mass. 233, 748 N.E.2d 956 (2001); *Blare v. Husky Injection Molding Systems Boston, Inc.,* 419 Mass. 378, 443 (1995). No express federal statutory counterpart exists to the provision of the Massachusetts which provides protections against discrimination on account of sexual orientation, see Act, §4 ¶1; *but see* 1 Employee Rights Litigation: Pleading and Practice 2-51 (§2.02[3][g], citing *Watkins v. United States Army*, 837 F.2d 1428 (9th Cir 1988), *vacated* 875 F.2d 699(1989)(Suggesting homosexuals entitled to protection under Equal Protection Clause);

Massachusetts decisional law governing claims of discrimination in employment has also traditionally varied from federal law in numerous important respects, *compare Blare*, *supra, and, e.g., St. Mary's Honor Center v. Hicks,* 509 U.S. 502(1993); *Dahill, supra*, *and Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999). Massachusetts law with respect to claims of discrimination in employment is furthermore not entirely settled and is continuing to evolve, *see, e.g., Abramian v. President and Fellows of Harvard College*, 432 Mass. 107, 731 N.E.2d 1075 (2000); *Lipchitz v. Raytheon Corp.,* 434 Mass. 493, 751 N.E.2d 360 (2001); *Dahill, supra*; *Dartt v. Browning-*

*Ferris Industries, Inc.,* 427 Mass. 1 (1998); *Sullivan v. Liberty Mutual Ins. Co.* Massachusetts Lawyers Weekly No. 10-061-05. In particular, the Massachusetts court has had few occasions to interpret the law relating to rights of parties raising claims under the age discrimination provision of the statute, which is accordingly not well developed.

Moreover, decisional law relating to removal favors federal court abstention in cases where, as here, no federal question is at issue, matters of paramount state interest are raised and state law is evolving, *see, e.g.*, *Burford v. Sun Oil* Co., 319 U.S. 315, 63 S.Ct. 1098 (1943), cited in Wright, *supra* at 222 (Abstention appropriate where issues involved specialized aspect of complicated regulatory system of local law to avoid needless conflict between state and federal courts); *Corcoran v. Ardra Ins. Co., Ltd.,* 842 F.2d 31 (2d Cir. 1988)(Decision to remand on abstention grounds not abuse of discretion where complex state regulatory system involved and issues unresolved by state); *King-Smith v. Aaron,* 455 F.2d 378 (3rd Cir. 1972); *see, also, Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070 (1959)(Abstention required where local law unsettled in context of eminent domain). The Supreme Court has recognized the appropriateness of federal courts declining jurisdiction in appropriate circumstances, including where denying a federal forum would clearly serve an important countervailing interest, *see, e.g., Colorado River Conservation Dist. v. United States,* 424 U.S. 800 (1976), *quoted in Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706 (1996). Abstention has also traditionally been found appropriate where, as here, equitable relief is sought, *see Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 120 (1981)(Brennan, J., concurring)(quoted in *Quackenbush, supra,* at 717).

Principles of federalism and comity long recognized by federal courts also favor abstention where important state interests are raised and enforcement is under way, circumstances present in this case, see, e.g., *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746 (1971), cited in *Federal Exp. Corp. V. Tennessee Public Service Com'n,* 738 F.Supp. 1140, (M.D. Tenn. 1990) aff'd 925 F.2d 662; cert. den. 502 U.S. 812, 112 S.Ct. 59 (Abstention appropriate where state interest in issues important and state judicial process ongoing); *see also* 28 U.S.C. 2283. Even while defendant may have right to remove by statute, plaintiff is still the master of her (his) own claims, see. *Burns v. Windsor Ins. Co.,* 31 F.R.D. 1092 (ND Ala. 1994).

The strong policies favoring abstention in cases such as this, as set out above, particularly in light of the absence of a compelling ground for federal jurisdiction, mean that this Honorable Court should exercise its right to abstain from adjudicating the matter, which must be remanded to the Massachusetts Superior Court for its determination.

**D.    DISCOVERY WOULD BE AN APPROPRIATE MEANS OF RESOLVING ANY DOUBTS CONCERNING THE REMAND OF THIS CASE**

Should there be any doubt concerning the clear factual grounds requiring remand of this case to state court, an order for limited discovery, on a reduced timetable, would be the optimal means of resolving them, see *Rautenstrauch, supra.* There, the court permitted the parties discovery, including depositions of executives of the removing corporate defendant. Testimony in those depositions then contributed to the court's analysis of the factual basis for determining the defendant's principal place of business. Given the strength of Mr. Jacobson's showing, and his right to have his matter heard in the forum of his choosing, such discovery would be the right approach should the court find itself unprepared to remand the case to state court.

**E.    SANCTIONS ARE APPROPRIATE ON ACCOUNT OF DEFENDANT'S IMPROPER REMOVAL AND FOR HAVING TO FILE THIS UNNECESSARY MOTION**

Plaintiff is presumptively entitled to attorneys fees and costs if removal is improper. A finding of bad faith is not necessary to award attorneys fees to prevailing party opposing removal. *Hart v. Walmart Stores*, 360 F. 3d 674, 677-681 (7th Cir. 2004); *Sirotsky v. New York Stock Exchange*, 347 F. 3d 985, 987 (7th Cir. 2003); *Excel Inc. v. Sterling Boiling and Mechanical, Inc.* 106 F. 3d 318, 322 (10th Cir. 1997)(1988 amendment requires courts to focus on legal propriety of removal without regard to motive; finding of bad faith not prerequisite to award)

In the instant matter, Mr. Jacobson filed his administrative charge on or about March 5, 2004 with the Massachusetts Commission Against Discrimination ("MCAD").  That process, ended on or about January 5, 2005, when Mr. Jacobson filed his complaint in state court, which included state claims only, see Exhibit D. The state court issued its tracking order setting forth applicable deadlines for each of the parties.  At no time during the year since the commencement of this action did defendant suggest it felt removal to federal court was appropriate or was contemplated.  No such mention arose during several contacts with defendant regarding waiver of service of the state Summons and Complaint. Now, more than a year after defendant first became aware of Mr. Jacobson's claims, with the likelihood that all witnesses, defense and plaintiff alike,  living within Massachusetts, defendant had filed the instant removal. Based on the  "boilerplate" Notice of Removal:  (1) without any amount specified as amount in controversy within the removal papers and (2) without any facts to support the legal requirement for "principal place of business" to establish true diversity, but mere conclusory statements and (3) failed to "meet and confer" prior to filing its Notice of Removal so as to avoid the filing of

any unnecessary motions and incurring of attorneys fees and costs by Mr. Jacobson, it appears

that defendant has filed its improper removal notice for the sole purpose of delay and should be

sanctioned. Mr. Jacobson has expended at least fourteen and one-half hours in research and the

preparation of his Motion to Remand, with some seventy ($70) dollars in related costs. In light

of all the circumstances, Mr. Jacobson respectfully requests that this Court order sanctions in the

amount of four thousand four hundred thirty-five ($4435.00) dollars for its improper removal and

dilatory tactics.

WHEREFORE YOUR PLAINTIFF Dan Jacobson respectfully requests that this

Honorable Court enter its ORDER forthwith remanding this action to the Massachusetts Superior

Court for its disposition; or in the alternative enter its ORDER that the parties be permitted to

conduct reasonable discovery to develop further evidence to demonstrate whether this matter

comes under federal jurisdiction because of diversity of citizenship or the amount in

controversy.

RESPECTFULLY SUBMITTED,
DAN JACOBSON. PLAINTIFF

BY HIS ATTORNEY

_____

Paul H. Merry, Esq.
Law Office of Paul H. Merry
44 School Street 10th Floor
 Boston, MA 02108
(617) 720-2400
BBO No. 343580

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAN JACOBSON, | ) | USDC of Massachusetts Case No |
| | ) | 05–CV-10664-MEL(Superior |
| | ) | Court for Middlesex County |
| Plaintiff, | ) | Civil Action No. 05-0060) |
| | ) | |
| v. | ) | |
| | ) | |
| CVS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

LIST OF EXHIBITS AND CASES SUPPORTING REMAND

EXHIBIT A                                   DECLARATION OF MORALES

EXHIBIT B                                   CIVIL ACTION COVER SHEET
                                            (MASSACHUSETTS)

EXHIBIT C                                   STATEMENT OF MERRY

EXHIBIT D                                   COMPLAINT

CASES

*De Walker v. Pueblo International, Inc.,* 569 F.2d 1169, 1171 (1st Cir.1978)

*Rautenstrauch v. Stern/Leach Company,* 2004 U.S. Dist. Ct. Lexis 140 (U.S.D.C. Mass. Case No. 03-1073-DPW (January 8, 2004)

*Tosco Corp. v. Communities for a Better Environment,* 236 F.3rd 495 (9th Cir. 2001)

*Ghaderi v. United Air Lines, Inc.* 136 F.Supp.2d 1041 (N.D.Cal. 2001)

EXHIBIT A

## DECLARATION OF RITA MORALES

I , Rita Morales, hereby depose and state as follows:

1.    I am an attorney licensed to practice law in the State of California  in all state
 courts and the Southern, Northern and Central District Courts in the same state and a member in
good standing of the bars thereof.  I am currently a resident of the State of Massachusetts and am
employed with the Law Office of Paul Merry, of Counsel to the law firm of Messing, Rudavsky and
Weliky,  located at 44 School Street, Ste. 1000, Boston, Massachusetts, 02108. I have been assisting
Mr. Merry in   the matter of *Jacobson v. CVS Corporation*, Superior Court in the County of
Middlesex Civil Action No. 05-0060 (United States District Court for the State of Massachusetts,
Civil Action No.05CV10664-MEL and am familiar with all aspects of the instant matter and motion.
 I have at least nineteen (19) years of  experience in handling labor and employment litigation in the
state and federal courts.

2.    On or about January 10, 2005  plaintiff Dan Jacobson in this matter filed his complaint
seeking relief, including damages, on account of the  defendant's discrimination against him on
account of his age, in the Superior Court for Middlesex County, Civil Action No.05-0060.

3.    On or about and during the months thereafter, Mr. Merry's office contacted defense
counsel Christine Nickerson and Todd Reed to inquire of defendant's willingness to waive service,
which defendant agreed to. In none of these conversations did defendant through mention any
intention to remove this case to federal court.

4.    On or about April 7, 2005, our offices first received Defendants' Notice of
 Removal without any prior notice.

5.    On or about April 21, 2005, I contacted the corporate offices of defendant by telephone.
During the telephone conversation, defendant's customer relations specialist and supervisor told me

that defendant has three (3) regional offices in Massachusetts for managing its operations in Massachusetts.

6.    The customer relations specialist further said that the regional offices housed defendant's Vice-President, other executives, regional and district managers and other managers and supervisors who handled the day to day operations for the State of Massachusetts and other nearby states, including but not limited to, operations in the states of New York, New Hampshire, Illinois and Pennsylvania.

7.    The customer relations specialist further said that these three regional offices are located in Stoughton, Massachusetts, Chicopee, Massachusetts and Needham, Massachusetts. The specialist also commented that defendant had had another regional office in Cambridge, Massachusetts for the last fifteen (15) years until its recent move to Needham, Massachusetts.

8.    The customer relations specialist also said that defendant has one regional office in the state of Rhode Island, located in the town of Lincoln.

9.    In that same conversation, the customer relations specialist said that as of the date of the conversation defendant operated at least three-hundred and fifty-two (352) retail pharmacies and/or drug stores in Massachusetts.

10.    The customer relations specialist further said that defendant operated fifty-three (53) drug stores or pharmacies in Rhode Island.

11.    The information provided by the customer relations specialist was corroborated by information on defendant's public website under the heading "Company Information". (See three pages attached as Ex. 1 to this Declaration)

12.    On or about April 25, 2005, I telephoned to defendant's regional and business office

located at 365 Washington St., Stoughton, Massachusetts, 02072 at telephone number (781) 341-8071

and spoke to Bethany Kingsbury, Regional Executive Administrative Assistant to Regional Director,

Tony Vanvalkenburg.

13.    Ms. Kingsbury told me that the regional office she was speaking from and works in

handles the day to day operations of defendant and houses the human resources department for all of

defendant's employees in Massachusetts as well as other states located in the United States.

14.    Ms. Kingsbury further told me that the hiring of defendant's associates and employees for

Massachusetts and other states originates out of the Stoughton office.

15.    On or about April 25, 2005, I telephoned to defendant's Chicopee, Massachusetts

regional and business offices and spoke to Mary Geoffrion, Regional Executive Administrative

Assistant to Regional Director, Ericka Kerr.

16.     During this conversation, Ms. Geoffrion said that the defendant's Chicopee regional

office directs the day to day operations of defendant's pharmacies and drug stores located in the

western parts of Massachusetts.

17.     On or about April 25, 2005, I telephoned to defendant's Needham, Massachusetts

Regional and Business Office, located at 144 Gould St., Needham, Massachusetts, 02494 and spoke

to "Donna", Executive Administrative Assistant to Regional Director Bob Quint.

18.    During this conversation, Donna said that this regional office had moved from Cambridge,

Massachusetts where defendant had had a regional offices for the last fifteen (15) years.

19.    Donna also said that the regional offices handle the day to day operations for all drug stores

and pharmacies defendant operates in Massachusetts, as well as other states, including but not limited

to the states of Illinois, New York, Pennsylvania and New Hampshire.

20.   Mr. Merry and I have expended approximately fourteen and a half (14.5) hours in research, drafting and preparing the foregoing Motion for Remand and supporting Memorandum of Reasons on behalf of Mr. Jacobson.   Contemporaneous time records documenting this work exist.

21.   The correct hourly charge rate for Mr. Merry based on background, experience, training and reputation in the community is three-hundred-fifty ($370) dollars.   The correct hourly rate for myself based on the same factors is three hundred ($300) dollars.

22.   As of the time preparing of this Declaration I had expended approximately nine (9) hours in researching and preparing the Motion for Remand and supporting papers.   Mr. Merry expended approximately five and one-half (4.5) hours in preparing the Motion and Memorandum.

I DECLARE UNDER THE PAINS AND PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this _____day of April, 2005 in Boston, Massachusetts.

_____
Rita Morales, Esq.

EXHIBIT C

STATEMENT OF PAUL H. MERRY

NOW COMES your deponent Paul H. Merry, and hereby states as follows:

1.    My name is Paul H. Merry and I am an attorney duly licensed to practice law in the Commonwealth of Massachusetts, including the United States District Court for Massachusetts.

2.    I am counsel to plaintiff Dan Jacobson in the matter of Jacobson v. CVS, Inc, Middlesex Civil Action No. 05-0060, U.S.D.C. Civil Action No. 05-CV-10664-MEL.

3.    I have spoken with my client on a number of occasions concerning the damages he anticipates might be due him on account of defendant's discrimination against him on account of his age, including as recently as May 4, 2005.

4.    Mr. Jacobson has no expectation that the damages which may arise from this matter would exceed seventy-four-thousand-nine-hundred-ninety-nine ($74,999) dollars.

5.    I also state that the Commonwealth of Massachusetts Civil Action Cover Sheet attached as Exhibit B to Mr. Jacobson' Memorandum of Reasons supporting his Motion for Remand of his case to state court, which recites a damages claim amount of thirty thousand ($30,000) dollars, is a true and accurate copy of the civil action cover sheet filed with Mr. Jacobson's Complaint in Middlesex County Superior Court (of the Commonwealth of Massachusetts.)


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY


_____
Paul H. Merry


–6–